UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TERRY BAUDER,

        Petitioner,

           v.

SHERRY BURT,

        Respondent.

_____/

CASE NO. 2:10-CV-10217
JUDGE AVERN COHN
MAGISTRATE JUDGE PAUL J. KOMIVES

## REPORT AND RECOMMENDATION ON PETITIONER'S HABEAS APPLICATION (docket #1) AND RESPONDENT'S MOTION FOR SUMMARY JUDGMENT (docket #10)

*Table of Contents*

I.     RECOMMENDATION ............................................................. 1
II.    REPORT .......................................................................... 1
    A.    *Procedural History* ................................................. 1
    B.    *Statute of Limitations* ............................................ 6
    C.    *Standard of Review* ............................................... 9
    D.    *Analysis* ......................................................... 11
    E.    *Recommendation Regarding Certificate of Appealability* ............ 19
        1.    *Legal Standard* ............................................. 19
        2.    *Analysis* ................................................... 20
    F.    *Conclusion* ....................................................... 20
III.   NOTICE TO PARTIES REGARDING OBJECTIONS ........................................ 21

\*     \*     \*     \*     \*

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.    REPORT:

A.    *Procedural History*

Petitioner Terry Bauder is a state prisoner, currently serving a sentence of 22½-40 years' imprisonment, imposed as a result of his state court convictions for two counts of first degree criminal sexual conduct (CSC-I), MICH. COMP. LAWS § 750.520b(1)(a). Petitioner's conviction

arises from the sexual assault of the then-nine-year-old daughter of his girlfriend.  The victim, who was ten years old at the time of trial, testified that petitioner had repeatedly penetrated her vagina with his finger since about the time she was five years old.  On one particular date, the victim testified, petitioner put a blanket over her head and then stuck "something" into her, which felt different than when he used his fingers.  The victim testified that she yelled and kicked when petitioner was molesting her.  She also testified that petitioner told her that she should say that petitioner's brother, who had molested her mother, had molested her.  She testified that she did not like petitioner, because he was always fighting with his mother and used drugs with her mother.  She told her grandmother, her pastor, and other people about the abuse, and denied having ever told them that anyone else beside petitioner had touched her.  The victim's grandmother testified that the victim told her of the abuse on July 4, 1991, and that she reported the matter to protective services the following day.  The prosecution also presented the testimony of Dr. David K. Hickock, who examined the victim and was qualified as an expert in child molestation.  He testified that the victim's vaginal opening was larger than expected in a nine year old girl, and that there was injury to the victim's hymen.  There was also anal scarring.  His physical findings were consistent with penetration by a finger or attempted penetration by a penis.  Petitioner presented testimony, through himself and other witnesses, that no one had heard the victim scream or cry out, that petitioner was hardly ever alone with the victim, and that petitioner and the victim's mother almost always showered together (contradicting the victim's testimony that the abuse often occurred while her mother was showering).  The trial court precluded petitioner from introducing evidence of alleged prior false accusations made by the victim, and evidence that the victim was found in bed with her cousin.

2

Petitioner was tried in the Branch County Circuit Court on November 2-3, 1992. On November 3, 1992, the jury returned a verdict of guilty on the two counts of CSC-I charged in the information.[1] The trial court sentenced petitioner on December 4, 1992, to two concurrent terms of 22½-40 years' imprisonment, departing from the minimum sentence range recommended in the Michigan sentencing guidelines. Petitioner, through counsel, appealed as of right to the Michigan Court of Appeals, raising claims of improper exclusion of evidence, prosecutorial misconduct, ineffective assistance of counsel, and improper departure from the sentencing guidelines. The Michigan Court of Appeals affirmed petitioner's convictions, but remanded for the trial judge to articulate his reasons for departing from the sentencing guidelines. *See People v. Bauder*, No. 160013 (Mich. Ct. App. Sept. 29, 1994). The Michigan Supreme Court subsequently denied petitioner's application for leave to appeal. *See People v. Bauder*, 449 Mich. 865, 535 N.W.2d 795 (1995). On September 1, 1998, the trial court denied various motions filed by petitioner, construing them collectively as a motion for relief from judgment pursuant to MICH. CT. R. 6.500-.509. On January 11, 1999, petitioner filed an application for the writ of habeas corpus in this Court, raising the claims that he had raised on direct appeal and in his motion for relief from judgment. On November 16, 1999, the Court dismissed the petition as untimely pursuant to 28 U.S.C. § 2244(d). *See Bauder v. Curtis*, No. 2:99-CV-70082 (E.D. Mich. Nov. 16, 1999).

On September 9, 2005, the victim executed an affidavit recanting her trial testimony. In her affidavit, the victim avers that at the time of trial she "was eight years old, not fully cognizant of the circumstances, and I believe I was pressured into affording the testimony that I offered." Respondent's Mot. for Summ. J., Ex. 3, ¶ 3. She also avers that "upon examination and after counsel

---

[1]The jury acquitted petitioner of being an habitual offender, which was also charged in the information.

with many care providers, I have reconsidered the testimony that I offered and now believe that it was not truthful," and that her "best examination of the events that occurred in 1991 including my present recollection of them, would be that there was no sexual activity between Mr. Bauder and myself." *Id*., ¶¶ 4-5. Based on this affidavit, petitioner filed a second motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.502(G). The trial court conducted an evidentiary hearing, at which the victim testified. At the hearing, the victim testified that years of counseling had raised doubts about her testimony, that she first began to have when she was 14 or 15 years old (the victim was 23 years old at the time of the hearing). She related her doubts at that time to her uncle and to petitioner's sister-in-law, and more recently to petitioner's sister. She reviewed the videotapes of her trial testimony when she was 15 or 16 years old, and did so again several years later. *See* Evid. Hr'g Tr., dated 1/5/06, at 10-12, 23-24. She testified that there was no sexual activity between herself and petitioner, but that she had been abused by other people. *See id*. at 12-13, 14-15. On cross-examination, she testified that her grandmother's husband had sexually assaulted her, but that she did not make this known to anyone at the time. *See id*. at 17-18. The only person she ever mentioned to the police or the social services worker was petitioner. *See id*. at 18-19. The victim testified that her testimony at trial was the result of manipulation by her grandmother. *See id*. at 20, 26. She indicated that she could not remember anything happening to her, and because of this she concluded that petitioner had not sexually abused her. *See id*. at 23.

Following the submission of supplemental briefs by the parties, the trial court denied petitioner's motion. The court reasoned:

> Looked at in the light most favorable to the Defendant, [the victim] did not recant her prior testimony but now cannot believe that the Defendant abused her and that perhaps her grandmother had influenced her to make the allegations 14 years before. This Court, too, has had an opportunity to view the videotape record of [the

4

> victim's] testimony as a 10 year-old child. Her description then of the sexual acts performed upon her by Defendant and the details surrounding them was persuasive and believable. Further, her demeanor as a witness, the manner [in which] she thought about and answered the questions, enhanced her credibility. Both in direct and cross examination, her responses appeared to be spontaneous and unrehearsed.
>
> . . . . [T]his Court determined that the victim, as much as she now wishes to believe that she was not abused by the Defendant, did not recant her earlier testimony, nor is there any other cause for which a new trial should be ordered.

*People v. Bauder*, No. 91-11-5263 FC, at 2 (Branch County, Mich., Cir. Ct. Oct. 3, 2006). Petitioner appealed that decision to both the Michigan Court of Appeals and Michigan Supreme Court, claiming that the trial court's denial of his motion constituted an abuse of discretion and deprived him of due process of law. Both courts denied his applications for leave to appeal in standard orders, based on his "fail[ure] to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Bauder*, 483 Mich. 877, 759 N.W.2d 208 (2009); *People v. Bauder*, No. 280758 (Mich. Ct. App. Apr. 16, 2008).

On January 16, 2010, petitioner, through counsel, filed the instant application for the writ of habeas corpus, raising the following claim:

> THE MICHIGAN JUDICIARY ERRED IN RULING THAT THE PETITIONER WAS NOT DUE RELIEF UNDER M.C.R. 6.508(D), RESULTING IN VIOLATIONS OF PETITIONER'S DUE PROCESS RIGHTS AS PROTECTED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION IN THAT PETITIONER'S CONVICTIONS ARE NOT SUPPORTED BY EVIDENCE OF GUILT BEYOND A REASONABLE DOUBT, AND THE PETITIONER'S RIGHT TO PRESENT A DEFENSE AND CONFRONT ACCUSERS AS PROTECTED UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

On March 12, 2012, the Court transferred the petition to the Sixth Circuit as a successive habeas petition pursuant to 28 U.S.C. § 2244(b). On April 1, 2011, the Sixth Circuit entered an order granting petitioner authorization to file his successive habeas application in light of the newly discovered evidence pursuant to § 2244(b)(2). Petitioner filed a motion to supplement his habeas

application on October 26, 2011, which I have granted by Order entered this date.  On December 5, 2011, respondent filed a motion for summary judgment, arguing that petitioner's claim is barred by the statute of limitations set forth in 28 U.S.C. § 2244(d).  Petitioner filed a response to the motion on January 5, 2012.

For the reasons that follow, the Court should decline to rule on the limitations issue, and should instead deny petitioner's application on the merits.

B.      *Statute of Limitations*

On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996).  In relevant part, the AEDPA amended 28 U.S.C. § 2244 to provide a one year statute of limitations for habeas petitions.  Specifically, the statute as amended by the AEDPA provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
> (A) the date on which the judgment became final by the conclusion of direct review of the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).[2]  There is no question here that, under the default starting provision of §

_____

[2]The AEDPA codified a one-year statute of limitations provision for motions to vacate federal convictions brought under 28 U.S.C. § 2255 which is nearly identical to the one found in § 2244(d)(1).  *See* 28 U.S.C. § 2255 para. 6.  Accordingly, cases discussing the § 2255 statute of limitations are

2244(d)(1)(A), petitioner's application is untimely. Petitioner contends, however, that under §
2244(d)(1)(D), the one year limitation period for his claim should not begin to run until the victim
executed her affidavit in September 2005. Respondent argues that petitioner could have discovered
the victim's recantation when she first expressed doubts to members of her and petitioner's families
in 1996 or 1997, and that the § 2244(d)(1)(D) starting date is therefore sometime in 1996 or 1997,
rendering petitioner's application untimely.

There are several factors which complicate the Court's analysis of the limitations issue, most
of which relate to the parties' failure to fully engage the issues raised by respondent's limitations
argument. As respondent correctly notes, the limitations period under § 2244(d)(1)(D) does not
begin on the date the victim executed her affidavit; rather, it begins on the date that "petitioner knew
or could have discovered that the witness was willing to recant his or her testimony." *Bates v.
Warren*, No. 05-CV-72772, 2010 WL 1286206, at *8 (E.D. Mich. Mar. 30, 2010) (citing *Deloney
v. McCann*, 229 Fed. Appx. 419, 422 (7th Cir. 2007); *Fama v. Commissioner of Corr. Servs.*, 235
F.3d 804, 816 n. 10 (2d Cir. 2000); *Ajamu-Osagboro v. Patrick*, 620 F. Supp. 2d 701, 711-12 (E.D.
Pa. 2009); *Webb v. Bell*, No. 2:07-CV-12689, 2008 WL 2242616, *5 (E.D. Mich. May 30, 2008)
(Borman, J.); *Chism v. Johnson*, No. 3-99-CV-2412-BD, 2000 WL 256875, *2 (N.D. Tex. Mar. 7,
2000)). Although the victim had expressed some doubts about her trial testimony as early as 1996
or 1997, the record is not sufficiently developed to determine whether she was at that time actually
willing to recant her testimony, or when she became so willing. Further, the record is not sufficiently
clear to determine whether this fact was actually communicated to petitioner himself such that he
should have known that the victim was willing to recant her trial testimony.

applicable here.

Second, the statute of limitations analysis is complicated by the fact that it appears that petitioner's application may be untimely even if the limitations period did not commence until the victim executed her affidavit. The victim's affidavit is dated September 9, 2005. Thus, the limitations period began running on September 10, 2005. Seventeen days elapsed until petitioner filed his motion for relief from judgment in the state court. The limitations period was then tolled during the pendency of the state court motion for relief from judgment pursuant to § 2244(d)(2). The limitations period began running again when the Michigan Supreme Court denied petitioner's application for leave to appeal with respect to the motion for relief from judgment on January 21, 2009. At that point, petitioner had 348 days remaining on the limitations clock. However, he did not file his habeas application until January 16, 2010, 360 days later and apparently 12 days beyond the limitations period, even accepting the date of the victim's affidavit as the appropriate starting date. This, at least, is how it appears upon an initial analysis, and neither party has addressed this issue, apparently simply assuming that the petition is timely if the limitations period commences on the date of the victim's affidavit.

Third, the Sixth Circuit has held that the actual innocence exception, which allows a court to review the merits of a habeas claim notwithstanding a procedural default, likewise exists for the habeas statute of limitations. *See Souter v. Jones*, 395 F.3d 577, 598-602 (6th Cir. 2005). In order to be entitled to the actual innocence exception, however, a petitioner must present "new and reliable evidence that was not presented at trial" that "show[s] that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 299 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."

*Schlup*, 513 U.S. at 327 (internal citation and quotation omitted).  Upon initial examination, it would appear that petitioner may have a strong argument for equitable tolling of the limitations period on the basis of actual innocence.  Despite this, in his response to respondent's motion petitioner states that he "has not argued that he was entitled to equitable tolling," Pet'r's Resp., at 2.  He then goes on to argue, however, that *Souter* and other cases cited by respondent are distinguishable, suggesting that he is making an actual innocence argument with respect to the limitations issue.

For these reasons, the statute of limitations issue is less than straightforward.  Fortunately, "[b]ecause the statute of limitations does not constitute a jurisdictional bar to habeas review, a federal court, can, in the interest of judicial economy, proceed to the merits of a habeas petition." *Rashad v. Lafler*, No. 2:08-CV-14983, 2009 WL 3247966, at *3 (E.D. Mich. Oct. 6, 2009) (Roberts, J.) (citing *Smith v. State of Ohio Dep't of Rehabilitation*, 463 F.3d 426, 429 n.2 (6th Cir. 2006)); *see also*, *Plough v. United States*, 442 F.3d 959, 965 (6th Cir. 2006).  Here, as explained below, it is clear that petitioner is not entitled to habeas relief on the merits.  Accordingly, rather than resolve the limitations issue, the Court should simply deny the petition on the merits.

C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme

Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Analysis*

Although petitioner attempts to assert a number of constitutional claims, at its core petitioner's claim is simply one that he is actually innocent based on newly discovered evidence. Such a claim, however, does not present a cognizable basis for habeas relief. A writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, the existence of new evidence, standing alone, is not a basis for granting the writ. As the Supreme Court has explained: "Claims

11

of actual innocence based on newly discovered evidence have never been held to state a ground for

federal habeas relief absent an independent constitutional violation occurring in the underlying state

criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also*, *id*. at 404 (claim of

actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas

petitioner must pass to have his otherwise [procedurally] barred *constitutional* claim considered on

the merits.") (emphasis added); *Schlup v. Delo*, 513 U.S. 298, 314-16 (distinguishing, in part,

*Herrera* because in this case the petitioner "accompanie[d] his claim of innocence with an assertion

of constitutional error at trial."); *Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("Of course, such

evidence must bear upon the constitutionality of the applicant's detention; the existence merely of

newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal

habeas corpus."), *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).

Thus, the newly discovered evidence, standing alone, provides no basis for habeas relief.  *See Cress*

*v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007); *Wright v. Stegall*, 247 Fed. Appx. 709, 711 (6th Cir.

2007).[3]

---

[3]In *Herrera* and again in *House v. Bell*, 547 U.S. 518 (2006), the Supreme Court noted that it might
be the case that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial
would render the execution of a defendant unconstitutional and warrant federal habeas relief," but
explicitly declined to determine whether this is, in fact, the constitutional rule.  *Herrera*, 506 U.S. at 417;
*see also*, *House*, 547 U.S. at 555.  This rule affords no basis for relief to petitioner, however.  First, as
*Herrera* makes clear this rule is limited to the context of executing an innocent person, and has no
applicability in a non-capital case.  *See Hodgson v. Warren*, 622 F.3d 591, 601 (6th Cir. 2010); *Wright*, 247
Fed. Appx. at 711.  Second, because the Supreme Court has recognized that the question whether there
exists a "federal constitutional right to be released upon proof of 'actual innocence' . . . is an open
question," *District Attorney's Office for the 3d Jud. Dist. v. Osborne*, 129 S. Ct. 2308, 2321 (2009), the trial
court's failure to grant relief on the basis of actual innocence was not contrary to or an unreasonable
application of any clearly established federal law under § 2254(d)(1).  *See Reyes v. Marshall*, No. CV 10-
3931, 2010 WL 6529336, at *3 (Aug. 23, 2010), *magistrate judge's report adopted*, 2011 WL 1496376 (C.D.
Cal. Apr. 14, 2011).  *See generally*, *Murdoch v. Castro*, 609 F.3d 983, 994 (9th Cir. 2010) (state court's failure
to grant relief on basis which Supreme Court has recognized is an open question cannot be
unreasonable application of clearly established law); *Smith v. Hofbauer*, 312 F.3d 809, 817 (6th Cir. 2002)

Likewise, petitioner cannot establish a constitutional claim on the basis of the trial court's denial of his motion for relief from judgment.  It is well established that nothing in the Constitution requires a state to establish a system of postconviction review, and thus "an infirmity in a state post-conviction proceeding does not raise a constitutional issue[.]"  *Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (internal quotation omitted); *accord Murray v. Giarratano*, 492 U.S. 1, 13 (1989) (O'Connor, J., concurring); *Dawson v. Snyder*, 988 F. Supp. 783, 826 (D. Del. 1997) (citing *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) and *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992)).  Thus, the state courts' alleged errors in his postconviction proceeding do not provide a basis for habeas relief.

Nor can petitioner establish a constitutional claim for relief on the basis that the victim perjured herself at trial.  Petitioner does not contend that the prosecutor or any other state actor knew the victim's testimony to be false.[4]  Rather, the victim testified at the evidentiary hearing that she

---

(same).

[4]Because it is not necessary to analyze petitioner's entitlement to relief, I take no position on the validity of the victim's purported recantation or her trial testimony.  I do note, however, that although the victim's recantation was initially unequivocal, she later explained that she came to the conclusion that nothing happened because she was not able to recover memories of the assaults during therapy. However, testifying that she could not remember a traumatic childhood event is not quite the same as testifying that it did not, in fact, happen.  Even if petitioner's claims were otherwise cognizable, to obtain relief petitioner would have to overcome the presumption that the trial court's factual determination that the victim's trial testimony was more credible is correct by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).  This is a particular difficult hurdle here, in light of both (a) the long delay between the victim's trial testimony and her purported recantation, *see Lewis v. Smith,* 110 Fed. Appx. 351, 355 (6th Cir. 2004); *Olson v. United States*, 989 F.2d 229, 231 (7th Cir. 1993); and (b) the fact that the trial judge observed the videotaped trial testimony and the victim's testimony at the evidentiary hearing, and thus was in the best position to judge her credibility, *see Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005) (internal quotation omitted) (state court's credibility determinations "are virtually unreviewable by the federal courts."); *cf. Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. 2254(d) [the predecessor to § 2254(e)(1)] gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.").

13

consistently told the prosecutor and social workers only that petitioner had sexually assaulted her, and that only her grandmother manipulated her testimony. As the Sixth Circuit has explained, in order for a witness's perjury at trial to constitute a basis for habeas relief, the petitioner must show "prosecutorial involvement in the perjury." *Burks v. Egeler*, 512 F.2d 221, 229 (6th Cir. 1975). The Sixth Circuit has repeatedly reaffirmed the requirement that a petitioner show prosecutorial involvement in or knowledge of the perjury. *See, e.g.*, *Rosencrantz v. Lafler*, 568 F.3d 583-84 (6th Cir. 2009); *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000); *King v. Trippett*, 192 F.3d 517, 522 (6th Cir. 1999); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998); *Ford v. United States*, No. 94-3469, 1994 WL 521119, at *2 (6th Cir. Sept. 23, 1994); *Akbar v. Jago*, No. 84-3540, 1985 WL 13195, at *1 (6th Cir. Apr. 10, 1985); *Roddy v. Black*, 516 F.2d 1380, 1383 (6th Cir. 1975). And the Supreme Court has repeatedly characterized the Due Process Clause only as barring conviction on the basis of perjury known by the prosecution to be such. *See, e.g.*, *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (emphasis added) ("[I]t is established that a conviction obtained through use of false evidence, *known to be such by representatives of the State*, must fall under the Fourteenth Amendment."); *United States v. Agurs*, 427 U.S. 97, 103 (1976) (emphasis added) (due process is violated by the "*knowing* use of perjured testimony."); *see id.* at 103-04 & nn. 8-9 (discussing cases). At a minimum, "[t]he Supreme Court has never held that due process is offended by a conviction resting on perjured testimony where the prosecution did not know of the testimony's falsity at trial." *LaMothe v. Cademartori*, No. C 04-3395, 2005 WL 3095884, at *5 (N.D. Cal. Nov. 11, 2005) (citing *Jacobs v. Scott*, 513 U.S. 1067 (1995) (Stevens, J., dissenting from denial of certiorari) (noting that the Supreme Court has yet to consider the question of whether due process is violated by a conviction based on perjured testimony regardless of the prosecutor's knowledge)); *cf. Briscoe v. LaHue*, 460

U.S. 325, 326 n. 1 (1983) ("The Court has held that the prosecutor's knowing use of perjured testimony violates due process, but has not held that the false testimony of a police officer in itself violates constitutional rights."). Thus, the failure of the trial court to grant petitioner a new trial based on the victim's allegedly false testimony at trial did not violate any clearly established law under § 2254(d)(1). *See Schaff v. Snyder*, 190 F.3d 513, 530 (7th Cir. 1999).

Petitioner raises several constitutional challenges to his conviction, all based on the victim's purported recantation. These arguments, however, are merely reformulations of petitioner's central claim–that newly discovered evidence establishes his innocence–and provide no basis for habeas relief. For example, petitioner contends that, in light of the victim's recantation, there is not sufficient evidence to prove his guilt beyond a reasonable doubt. However, petitioner is not entitled to relief on this basis "because *Jackson v. Virginia*, 443 U.S. 307 (1979), requires the court to evaluate the 'record evidence' to determine whether a finding of guilt could be supported. The [new] testimony of [the victim] was not presented at trial and therefore cannot be considered in an insufficiency argument." *Thomas v. Cain*, 139 Fed. Appx. 620, 621 (5th Cir. 2005) (parallel and internal citations omitted) (quoting *Jackson*, 443 U.S. at 318); *see also*, *Herrera*, 506 U.S. at 402 (citation omitted) ("[T]he sufficiency of the evidence review authorized by *Jackson* is limited to 'record evidence.' *Jackson* does not extend to nonrecord evidence, including newly discovered evidence."); *Goins v. Angelone*, 52 F. Supp. 2d 638, 678 (E.D. Va. 1999). Petitioner does not contend that the evidence adduced at trial, if believed by a jury, was insufficient to prove his guilt beyond a reasonable doubt, and a cursory review of the victim's testimony at trial shows that the prosecution presented sufficient evidence to prove the elements of CSC-I beyond a reasonable

doubt.[5]

Petitioner also contends that, by finding that the victim had not truly recanted her testimony, the trial court deprived him of his right to confront the witness with her new testimony and invaded the province of the jury by judging the credibility of the witness. These arguments, however, misapprehend the distinction between a trial, at which the rights to confront the witnesses and to a jury determination of guilt are applicable, and a postconviction proceeding, at which such rights are not applicable. The rule that the jury is the exclusive judge of the weight and credibility of the evidence, it is well established, "is applicable only where the issue is tried to a jury. In issues tried to the court it is the function of the court to determine the issues of fact and the credibility of testimony. A motion for new trial on the ground of newly discovered evidence is heard by the trial judge and it is his function to determine the credibility of all evidence that may be produced." *Connelly v. United States*, 271 F.2d 333, 335 (8th Cir. 1959). Thus contrary to the implication of petitioner's argument, under neither federal nor Michigan law is a court considering a new trial

---

[5]Under Michigan law, "[a] person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists: (a) That other person is under 13 years of age." MICH. COMP. LAWS § 750.520b(1)(a). Thus, to be convicted of CSC-I the evidence must show that petitioner's victim was under 13 years of age and that he engaged in an act of sexual penetration with her. Further, under the Michigan law, "'[s]exual penetration'" means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required.' MICH. COMP. LAWS § 750.520a(o). Here, the victim testified that on multiple occasions, beginning when she was five years old, petitioner digitally penetrated her. *See* Trial Tr., dated 11/2/92, at 81-87. This testimony alone, if believed by the jury, was sufficient to establish the elements of CSC-I beyond a reasonable doubt. *See United States v. Kenyon*, 397 F.3d 1071, 1076 (8th Cir. 2005) ("Even in the face of inconsistent evidence, a victim's testimony alone can be sufficient to support a guilty verdict."); *People v. Lemmon*, 456 Mich. 625, 642 n.22, 576 N.W.2d 129, 137 n.22 (1998) ( "It is a well established rule that a jury may convict on the uncorroborated evidence of a CSC victim."); MICH. COMP. LAWS § 750.520h ("The testimony of a victim need not be corroborated in prosecutions under [the criminal sexual conduct statutes].").

16

motion "required to accept [the defendant's] proffered evidence as true, order a new trial, and allow a jury to determine whether the proffered evidence is credible." *United States v. McCullough*, 457 F.3d 1150, 1167 (10th Cir. 2006); *see also*, *United States v. Desir*, 273 F.3d 39, 42 (1st Cir. 2001) (internal quotation omitted) (in considering new trial motion based on newly discovered evidence, "district court has broad power to weigh the evidence and assess the credibility of both the witnesses and the 'new' evidence."); *People v. Cress*, 468 Mich. 678, 692, 664 N.W.2d 174, 182 (2003) (in considering new trial motion, "it is within the trial court's discretion to determine the credibility" of the new evidence.).  Indeed, a contrary rule would require a new trial any time a defendant comes forward with new evidence, no matter how incredible.  *See Desir*, 273 F.3d at 42.  In short, petitioner "cites no authority, nor have [I] discovered any, which indicates that trial judges considering motions for new trial cannot make credibility determinations without running afoul of the right to trial by jury. . . .  Couching the new trial decision by the trial judge in terms of the Sixth Amendment right to trial by jury does not elevate the question to one of constitutional dimension." *Durrett v. Brown*, No. 92-36683, 1993 WL 326442, at * (9th Cir. Aug. 26, 1993); *see also*, *People v. Gilmore*, No. 285080, 2009 WL 2448150, at *4 (Mich. Ct. App. Aug. 11, 2009) (trial judge did not invade province of jury and deny defendant his Sixth Amendment right to a jury trial by finding newly discovered evidence not credible and insufficient to warrant a new trial).

Nor can petitioner show that he was denied his right to confront the witnesses against him by the trial court's failure to grant him a new trial, because the right of confrontation is a trial right that he was fully accorded.  As the Supreme Court has repeatedly explained, "the right to confrontation is a *trial* right." *Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987) (emphasis in original) (citing *California v. Green*, 399 U.S. 149, 157 (1970); *Barber v. Page*, 390 U.S. 719, 725 (1968)).

17

Here, petitioner was fully accorded his right to confront the victim at trial, and through counsel did so. He was further permitted to confront the victim at the postconviction evidentiary hearing, even though he had no constitutional right to do so at that stage of the proceedings. *See Penton v. Kernan*, 528 F. Supp. 2d 1020, 1037 (S.D. Cal. 2007); *Cureton v. Wilson*, No. 1:05CV0623, 2006 WL 1720544, at *4 (N.D. Ohio June 22, 2006). Again, petitioner has cited, and I have found, no cases holding that the failure to grant a new trial based on a subsequent recantation by a witness who was subject to cross-examination at trial violates the Confrontation Clause. On the contrary, the Supreme Court has explained that so long as a defendant had a full opportunity to explore any problems in a witness's testimony through cross-examination, the Confrontation Clause is not violated even if that "testimony is marred by forgetfulness, confusion, or evasion." *Delaware v. Fensterer*, 474 U.S. 15, 22 (1985).

Despite his attempts to dress his claims in constitutional language, petitioner asserts nothing more than that he has newly discovered evidence which shows that he is actually innocent of the crimes for which he was convicted. No matter how compelling, in a non-capital case such as this one such evidence simply does not provide a basis for federal habeas corpus relief. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.[6]

---

[6]I note that petitioner's application is, by its terms, limited to his newly discovered evidence of actual innocence claim. Petitioner does not attempt to raise the constitutional claims raised in his prior habeas application. Even if petitioner were attempting to do so, however, the newly discovered evidence would not revive these claims, which the Court previously determined were time-barred. In applying the delayed commencement provisions set forth in § 2244(d)(1)(B)-(D), a court must apply a claim-by-claim approach. *See Souliotes v. Evans*, 622 F.3d 1173, 1179-80 (9th Cir. 2010); *Fielder v. Varner*, 379 F.3d 113, 117-20 (3d Cir. 2004); *cf. Pace v. DiGuglielmo*, 544 U.S. 408, 416 n.6 (2005) (emphasis added) (explaining, in dicta, that § 2244(d)(1) "provides one means of calculating the limitation with regard to the "application" as a whole, § 2244(d)(1)(A) (date of final judgment), *but three others that require claim-by-claim consideration*, § 2244(d)(1)(B) (governmental interference); § 2244(d)(1)(C) (new right made retroactive); § 2244(d)(1)(D) (new factual predicate)."); *Ege v. Yukins*, 485 F.3d 364, 373 (6th Cir. 2007) (explaining, in applying § 2244(d)(1)(D), that "[w]e must analyze Ege's two habeas claims separately with

E.      *Recommendation Regarding Certificate of Appealability*

1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable

_____

regard to . . . the section 2244(d)(1) bar.").  All of the claims raised in petitioner's first application were based on errors at trial, and are unrelated to the newly discovered evidence.  Thus, the newly discovered evidence does not revive these claims.

19

cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

  2. *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claim, the Court should also deny petitioner a certificate of appealability. As explained above, it is well established that a claim of actual innocence is not cognizable on habeas review, and that newly discovered evidence is not considered in reviewing the sufficiency of the evidence. Further, as explained above, it is clear that the trial court's failure to grant petitioner a new trial did not deprive him of his Sixth Amendment rights to a jury trial and to confront the witnesses. Thus, the resolution of petitioner's claim is not reasonably debatable, and the Court should deny petitioner a certificate of appealability.

F. *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: March 30, 2012                              s/Paul J. Komives
                                                   PAUL J. KOMIVES
                                                   UNITED STATES MAGISTRATE JUDGE

21

#10-10217
Bauder v. Burt

I hereby certify that a copy of the foregoing document was sent parties of record on April 3, 2012 electronically or by U.S. mail.


s/Michael Williams
Relief Case Manager for Honorable Paul J. Komives